UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEE DERTZ,

                              Plaintiff,

        v.                                              Case No. 24-cv-995-pp

PETE STIEFVATER, *et al.*,

                              Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED
WITHOUT PREPAYING FILING FEE (DKT. NO. 2), GRANTING PLAINTIFF'S
MOTION TO AMEND COMPLAINT (DKT. NO. 7), DENYING PLAINTIFF'S
MOTION FOR ORDER OF PROTECTION (DKT. NO. 8) AND SCREENING
AMENDED COMPLAINT (DKT. NO. 12) UNDER 28 U.S.C. §1915A**

        Plaintiff Shannon Lee Dertz, who is incarcerated at the Drug Abuse

Correctional Center (DACC) and is representing himself, filed a complaint

under 42 U.S.C. §1983, alleging that the defendants violated his rights under

federal and state law. On September 3, 2024 the court received from the

plaintiff a motion for leave to file an amended complaint, dkt. no. 7; on

September 19, 2024—before the court had ruled on that motion—the court

received from the plaintiff an amended complaint, dkt. no. 12. Because the

court had not yet screened the plaintiff's original complaint when he filed his

amended complaint, the court will grant the plaintiff's motion to amend the

complaint, dkt. no. 7, and screen the amended complaint, dkt. no. 12. This

order also resolves the plaintiff's motions for leave to proceed without

prepaying the filing fee, dkt. no. 2, and for an order of protection, dkt. no. 8.

## I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 16, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $10.30. Dkt. No. 5. The court received that fee on September 13, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint (Dkt. No. 12)

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

3

B.     <u>The Plaintiff's Allegations</u>

The amended complaint involves events that allegedly occurred while the plaintiff was incarcerated at Sanger Powers Correctional Center and the DACC. Dkt. No. 12 at 2. It names as defendants Captain Pete Stiefvater and Superintendent Stephanie Cummings from Sanger Powers. <u>Id.</u> at ¶¶4–5. It also names DACC Program Specialists Jennifer Fairchild and Mary Shandonay, Captains Michael Verheyen and Scott Taphorn, Superintendent Stephanie Hennings, Warden Clinton Bryant and Social Services supervisors Anna Kedzierski, Tammy Frassetto and Lonnie Krueger. <u>Id.</u> at ¶¶6–12. The plaintiff has sued all the defendants in their individual capacities. <u>Id.</u> at ¶¶4–12.

The plaintiff alleges that members of the administration and program specialists at DACC "are conspiring with the administration at [Sanger Powers]" to monitor his phone calls, mail and email "for personal use" and "to do harmful acts against [him] for evil and malicious intentions." <u>Id.</u> at ¶14. He alleges that on May 5, 2024, defendant Fairchild called him to the security bubble to warn him against letting other incarcerated persons at Sanger Powers use his phone PIN number. <u>Id.</u> at ¶15. The plaintiff said he did not allow others to use his PIN and asked who told Fairchild that he had. <u>Id.</u> He says Fairchild "got angry" and told the plaintiff she would not "tell [him] that information." <u>Id.</u> A week later, the plaintiff sent Fairchild a form "asking for documentation of the warning" because he "needed it for legal purposes." <u>Id.</u> at ¶16. He claims that Fairchild "retaliated on the same request form stating [he would] be receiving a conduct report." <u>Id.</u>

The plaintiff alleges that the next day—May 13, 2024—Fairchild filed a false conduct report against him for disobeying orders and lying, which resulted in "disciplinary action." Id. at ¶17. He says this conduct report "did not state any facts showing that [he] lied or disobeyed orders." Id. On May 15, 2024, Captain Verheyen called the plaintiff into the bubble to issue him the conduct report. Id. at ¶18. The plaintiff says that Verheyen told him that the plaintiff was receiving the conduct report "since [he] made a big stink about" the warning Fairchild had given him. Id. Verheyen told the plaintiff that information about Sanger Powers was not on the conduct report, even though the warning was about giving his PIN number to others at Sanger Powers. Id. The plaintiff says his conduct report "was predetermined and [his] hearing was not conducted in a manner that was fair or impartial." Id.

The plaintiff alleges that on May 19, 2024, he mailed his appeal of his contested hearing to Warden Bryant "and informed him what was happening here at DACC." Id. at ¶19. The only response he received was a letter affirming the hearing officer's decision. Id. On June 28, 2024, in response to an open records request, the plaintiff received an email from May 2, 2024. Id. at ¶20. The plaintiff says the email was from Stiefvater and was sent to Shandonay, Fairchild, Cumming and Verheyen; he says it shows that Stiefvater was reviewing the plaintiff's phone calls from Sanger Powers "because he has filed multiple complaints while housed at [Sanger Powers]." Id. Stiefvater learned that incarcerated person Marquan Kendricks had used the plaintiff's phone PIN and believed that the plaintiff "[was] aware of this." Id.

The plaintiff says that through open records requests, on July 18, 2024 he received additional emails between Fairchild, Stiefvater, Shandonay, Cummings, Verheyan and Taphorn. Id. at ¶21. He says these emails show the defendants "conspiring to target [him] and come up with a way to fabricate a falsified conduct report." Id. The plaintiff claims that Marquan Kendricks was never at Sanger Powers, and the plaintiff never was issued a conduct report for allowing Kendricks to use his phone PIN. Id. at ¶22. The plaintiff claims that the defendants conspired to retaliate against him "to get [him] kicked out of ERP [Earned Release Program] by Fairchild and have [him] spend the rest of [his] time in prison until [his] mandatory release date." Id. at ¶23.

The plaintiff also alleges that the DACC Social Services supervisors (Hennings, Kedzierski, Frassetto and Krueger) failed to protect him. Id. at ¶25. He says that on March 3, 2024, he emailed these supervisors "letting them know [he] was in fear of [his] safety and the outcome of [his] programming (ERP) in means of retaliation from [Sanger Powers]" because of Sanger Powers staff friendships, marriages and other relationships with DACC staff. Id. at ¶26. The plaintiff alleges that he "was targeted already and had been disresected [*sic*], harassed and embarrassed" in front of other incarcerated persons for not signing in when he "returned from outside." Id. at ¶27. The plaintiff says he never has had to sign in or out to go outside. Id.

The plaintiff alleges that on March 6, 2024, he spoke with Fairchild, who gave him a "separation form to fill out and return." Id. at ¶28. (The plaintiff does not explain what a separation form is.) A few weeks later, he wrote to

6

Fairchild about this form, and Fairchild told him to "write Captain Scott Taphorn." Id. at ¶29. The plaintiff says that "[he] wrote," but did not receive a response. Id. About a month later, the plaintiff wrote to Hennings "concerning [his] safety between Sanger Powers and DACC and what was going on," but he received "[n]o help." Id. at ¶30. He again wrote to the supervisors about his safety concerns and how Shandonay tried to get the plaintiff "into a physical altercation" with Marquan Kendricks (presumably at DACC because the plaintiff says Kendricks never was at Sanger Powers), which he says would result in him being removed from the ERP. Id. at ¶31. He says no one talked to him about his concerns. Id.

The plaintiff says that on July 10, 2024, he again emailed the supervisors about an unidentified sergeant harassing him, arguing with him and taking his legal mail while threatening to issue him a conduct report. Id. at ¶32. The plaintiff says that this included "the 1983 claims [he] just filed" and which the court since has received. Id.[1] He says he filed institutional complaints that were "returned, rejected or dismissed by Verheyen, his friends and associates etc." Id. at ¶33. He claims that "friends and associates from Winnebago Correctional Center" helped reject, return and dismiss his institutional complaints. Id. at ¶36. The plaintiff says that on July 14, 2024, he saw Verheyen about concerns about his safety. Id. at ¶35. He says Verheyen

_____

[1] Since July 15, 2024, the plaintiff has filed four §1983 complaints in this district, including the complaint in this case. The court received two of those complaints on July 15, 2024, one on August 7, 2024 and one on September 23, 2024.

"threatened" to send him to another prison to complete his ERP, which the plaintiff says would delay his programming. Id. The plaintiff says he has experienced psychological and physical symptoms from the "retaliation, conspiracy, defamation of character, mail tampering and constant worry about any little thing [he] might do or say wrong will be a conduct report or even worse sent to segregation 'as another way of retaliation.'" Id. at ¶39.

The plaintiff claims that the Social Services supervisors failed to protect him from unspecified "injuries, or in failure to intervene to prevent these evil and malicious acts from occurring." Id. at ¶40. He claims that Fairchild, Stiefvater, Shandonay, Cummings, Verheyen and Taphorn conspired against him. Id. at ¶41. He alleges that Fairchild, Stiefvater and Cummings retaliated against him "without the need or cause." Id. at ¶42. He claims that Fairchild provided "inadequate written disposition of charges," and that Verheyen found him guilty and refused "to conduct a proper hearing" in violation of the plaintiff's right to due process. Id. at ¶43. He says that Warden Bryant failed to discipline or otherwise "curb the known abuse" from Stiefvater, Cummings and Verheyen. Id. at ¶44. Finally, he says that Verheyen threatened him "without the need or cause." Id. at ¶45.

The plaintiff asks the court to terminate defendants Stiefvater, Cummings, Verheyen and Bryant from their positions at Sanger Powers and DACC. Id. at ¶¶46–47. He also seeks $6 million in compensatory and punitive damages, and he asks the court to expunge his disciplinary convictions and to

allow him to proceed on "[s]tate-law claims of negligence against all defendants." Id. at ¶¶48–51.

C.    Analysis

The amended complaint primarily asserts two claims: first, that Fairchild, Stiefvater, Shandonay, Cummings, Verheyan and Taphorn conspired against the plaintiff to violate his rights, and second, that the DACC Social Services supervisors (Hennings, Kedzierski, Frassetto and Krueger) failed to protect him from this treatment.

Conspiracy is not an independent basis for liability under §1983. Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008) (citing Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). To proceed on his conspiracy claim, the plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015). Put differently, the plaintiff must "show an underlying constitutional violation" and "demonstrate that the defendants agreed to inflict the constitutional harm." Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018). The plaintiff alleges that the defendants agreed to violate his rights, and he says that he obtained emails through open records requests as proof of the agreement. The question is whether the amended complaint alleges that the defendants' alleged acts violated the plaintiff's constitutional rights.

The plaintiff says that Fairchild and the other defendants retaliated against him. The court analyzes these allegations under the First Amendment.

9

See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The amended complaint does not state a claim of retaliation. The plaintiff sufficiently alleges a deprivation of his rights—Fairchild issuing him a conduct report and the defendants attempting to get him kicked out of the ERP (although he does not allege that he *was* kicked out of that program). But the amended complaint does not sufficiently allege that the plaintiff engaged in protected conduct that caused the alleged retaliation. The plaintiff says that Fairchild warned him against allowing other incarcerated persons to use his phone PIN (a violation of institutional rules). He says he questioned Fairchild about this incident and requested "documentation" about the warning. He does not explain what "documentation" he requested. He says that in response, Fairchild issued him a false conduct report. He then alleges that Verheyen told him that he received the conduct report because he "made a big stink about" the warning Fairchild issued him about letting other incarcerated persons to use his phone PIN. The plaintiff has a protected First Amendment right to file grievances or complaints about prison conditions. Daugherty, 906 F.3d at 610. But the plaintiff has not alleged that he filed a grievance or that he complained about prison conditions. He has alleged that he asked for documentation about

a warning he received from a prison official based on that official's belief that he previously had let incarcerated persons at Sanger Powers use his phone PIN. To the extent that the court understands these allegations (which are convoluted), they do not appear sufficient for the court to infer that Fairchild retaliated against the plaintiff by issuing him a conduct report in response to his protected activity.

The plaintiff alleges that Fairchild and Verheyen deprived him of his right to due process. He says Fairchild did not provide an adequate notice of his charges and Verheyen conducted an unfair disciplinary hearing. The Fourteenth Amendment governs the plaintiff's due process claim. See Wolff v. McDonnell, 418 U.S. 539, 563–66 (1974). But the "Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." Isby v. Brown, 856 F.3d 508, 524 (7th Cir. 2017). To proceed on a due process claim, the plaintiff must show: "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007) (citing Rowe v. DeBruyn, 17 F.3d 1047, 1053 (7th Cir. 1994)). There is no due process right not to be charged with or convicted of a prison disciplinary offense, Wolff, 418 U.S. at 564–71, or to remain free from disciplinary segregation, Sandin v. Conner, 515 U.S. 472, 484 (1995).

The amended complaint does not satisfy this standard. First, the plaintiff has not explained what discipline he faced from the allegedly false conduct report that Fairchild issued him. He says he fears being sent to disciplinary

segregation, but he has not alleged that he *was* sent there. Without knowing what consequences the plaintiff faced from the disciplinary charges, the court cannot determine what process was due. If the plaintiff was facing only time in disciplinary segregation for his alleged conduct, then he was entitled only to notice of the charges and an opportunity to present his views (such as through a written statement). See Adams v. Reagle, 91 F.4th 880, 895 (7th Cir. 2024) (citing Westefer v. Neal, 682 F.3d 679, 684–85 (7th Cir. 2012)). If the plaintiff was facing possible enlargement of his sentence or loss of earned good time, then he would be entitled to additional protections. See Sandin, 515 U.S. at 483–84; Wolff, 418 U.S. at 563–66. Because the amended complaint does not provide any information about the consequences of the plaintiff's conduct report and disciplinary conviction, the court cannot determine what process he was due and whether the defendants denied him that process.

Second, even assuming the plaintiff was entitled to at least written notice of the charges and a chance to respond, the plaintiff does not explain *how* the written notice of the charges against him was deficient; he says only that Fairchild provided him "inadequate written disposition [*sic*] of charges." Dkt. No. 12 at ¶43. The court is unsure whether the plaintiff meant to write that Fairchild provided inadequate *notice* of the charges, or that Fairchild provided him an inadequate written explanation/memorialization of his *conviction*. Nor does the amended complaint say whether the plaintiff had an opportunity to respond to the charges. The plaintiff similarly alleges that although Verheyen conducted a hearing it was not "a proper hearing." Id. He does not explain what

made the hearing improper. And even if he did, the court still could not determine whether any deficiencies violated the plaintiff's rights without knowing what process he was due. The plaintiff's vague allegations about his conduct report and contested hearing do not state a claim.

The amended complaint also suggests that the plaintiff may by trying to proceed on a claim related to his appeal from his contested hearing. He alleges that he mailed his appeal to Warden Bryant but received only a letter "affirming the hearing officer's decision." Id. at ¶19. To the extent that the plaintiff wants to proceed on these allegations, he does not state a claim because the plaintiff does not have a due process right to appeal his disciplinary conviction. See Lowe v. Stockey, 36 F. App'x 353, 360 (10th Cir. 2002) (citing Wolff, 418 U.S. at 564– 66) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal.").

Because the amended complaint does not sufficiently allege an underlying constitutional violation, there is nothing the defendants could be liable for conspiring to do. The amended complaint does not state a claim against Fairchild, Stiefvater, Shandonay, Cummings, Verheyan and Taphorn for conspiring to violate the plaintiff's rights.

For the same reason, the amended complaint fails to state a claim against the Social Services supervisors. The plaintiff says that the supervisors failed to intervene and protect him from harm (retaliation, conspiracy, due process deprivations) by the other defendants. But because he does not sufficiently state a claim about that harm, the court cannot determine whether

13

there was anything from which the supervisors could have failed to protect him. See Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing Fillmore v. Page, 358 F.3d 496 (7th Cir. 2004)) (explaining that "[i]n order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation").

To the extent the plaintiff seeks to proceed on a claim about the alleged harassment from staff for not signing in and sending legal mail, he does not state a claim. Except in exceptional circumstances, verbal harassment and unprofessional comments from prison officials do not violate the Eighth Amendment. See Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019) (citing Beal v. Foster, 803 F.3d 356, 357–58 (7th Cir. 2015)) (explaining that prison staff's use of even "[r]epugnant words . . . will seldom rise to an Eighth Amendment violation" because "[r]elationships between prisoners and prison staff are not always marked by genteel language and good manners"). The plaintiff alleges that staff harassed and embarrassed him in front of other incarcerated persons for not signing in when he came back from being outside. He has not provided any details about this alleged harassment. He also says another unnamed sergeant harassed him about sending mail related to other §1983 complaints, but he does not say the sergeant prohibited him from sending that mail. These allegations do not describe the kind of exceptional or extreme circumstances that amount to a constitutional violation.

The plaintiff says that Warden Bryant failed to discipline other staff at DACC for their alleged abuse of incarcerated persons. But the amended

complaint does not allege that Bryant was ever aware of any of the alleged mistreatment the plaintiff says he faced. The only communication the plaintiff says he sent to Bryant was his appeal from his contested hearing. Bryant cannot be held liable for the conduct of his subordinate officers merely because he is the warden. See Iqbal, 556 U.S. at 676; Stankowski v. Carr, No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024). He may be held liable for others' conduct only if he knew about and approved or facilitated the conduct *before* it occurred. See Nanda v. Moss, 412 F.3d 836, 842–43 (7th Cir. 2005). The plaintiff's allegation that Bryant failed "to discipline a subordinate or take other corrective action isn't enough." Phillips v. Mega Concrete Constr., LLC, Case No. 20-CV-658, 2022 WL 252100, at *8 (W.D. Wis. Jan. 27, 2022) (citing Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Because the amended complaint does not allege that Bryant personally participated in or was aware of any of the alleged conduct before it occurred, he cannot be held liable for not taking corrective action.

The plaintiff also alleges that staff have rejected, returned and dismissed his institutional complaints. Yet he also says he exhausted his administrative remedies for "all claims and all defendants." Dkt. No. 12 at 11. Either way, the plaintiff has no inherent constitutional right to a prison grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did

not cause or participate in the underlying conduct states no claim." <u>Owens v. Hinsley</u>, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). That means the plaintiff has not stated a claim regarding the alleged return, rejection or dismissal of his institutional complaints.

The amended complaint does not state a claim for the reasons explained above. But it is possible that if he were to provide more information, the plaintiff might be able to state a claim regarding his allegations of conspiracy, retaliation, a due process violation or failure to protect. The court will give him *a final opportunity* to amend his complaint to correct the deficiencies the court has described and to better explain his claims. He may not include in the second amended compliant his allegations about being harassed by staff or his denied institutional complaints because for the reasons the court explained above, those allegations would not state a claim even with more information.

When writing his second amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is including with this order a copy of its amended complaint form. The plaintiff must write "Second" above the words Amended Complaint at

the top of the first page. He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the second amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The second amended complaint takes the place of the prior complaints and must be complete by itself. The plaintiff may not refer the court back to his original or amended complaint. He instead must repeat in the second amended complaint any facts from the amended complaint that he believes are necessary to his claims. If the second amended complaint does not comply with the instructions in this order, the court will dismiss the second amended complaint and will not give the plaintiff another opportunity to amend his complaint.

The amended complaint asks the court to order Sanger Powers and DACC to fire several defendants. The court has no authority over hiring or firing decisions of institutions and cannot order these institutions to demote or fire their employees. The plaintiff also seeks expungement of his disciplinary conviction or convictions. But the plaintiff cannot seek this relief in a lawsuit brought under §1983. To seek expungement of convictions, the plaintiff must file a petition for a writ of *habeas corpus*. <u>See</u> <u>Greene v. Meese</u>, 875 F.2d 639, 640 (7th Cir. 1989) (citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); and <u>Larsen v. Sielaff</u>, 702 F.2d 116, 118 (7th Cir. 1983)). Under the PLRA, the

plaintiff may seek *limited* injunctive relief, see 18 U.S.C. §3626(a), or monetary damages. The court advises the plaintiff that if he decides to file a second amended complaint, he should carefully read this order, limit his second amended complaint to the claims described above and seek available relief.

Finally, because the amended complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any putative claims arising under state law. The court will dismiss any state law claims without prejudice pursuant to 28 U.S.C. §1367(c)(3).

**III.     Motion for Order of Protection (Dkt. No. 8)**

The plaintiff seeks an order of protection against all defendants and against Captain Terrence Jaeger and Superintendent Maria Silao-Johnson of Winnebago Correctional Center. Dkt. No. 8. He asks the court to protect him "from anymore [*sic*] retaliations [*sic*], conspiracies or any harmful acts against [him]." Id. at 2. He says he has 100 days remaining in the ERP and wants "to be able to finish without being terrorized by anymore [*sic*] DOC staff." Id.

The court will not grant the plaintiff's request for a protective order. For the reasons the court explained above, the amended complaint does not state a claim that the defendants conspired against the plaintiff, retaliated against him or otherwise harmed him. The plaintiff's motion gives no reason for the court to believe that without a court order, the plaintiff has faced or will face retaliation, conspiracies "or any harmful acts" from the defendants. The plaintiff also may not seek injunctive relief against someone who is not a party to this lawsuit and is not otherwise involved in the litigation. See Santiago v. Walls, 196 F.

App'x 416, 417 (7th Cir. 2006) (citing <u>United States v. Kirschenbaum</u>, 156 F.3d 784, 794 (7th Cir. 1998)). That includes Captain Jaeger and Superintendent Silao-Johnson, who are not named defendants and do not work at DACC or Sanger Powers.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **GRANTS** the plaintiff's motion to amend his complaint. Dkt. No. 7.

The court **DENIES** the plaintiff's motion for an order of protection. Dkt. No. 8.

The court **CONCLUDES** that the plaintiff's amended complaint fails to state a claim. Dkt. No. 12.

The court **ORDERS** that the plaintiff may file a second amended complaint that complies with the instructions in this order. If the plaintiff chooses to file a second amended complaint, he must do so in time for the court to *receive it* by the end of the day on **November 22, 2024**. If the court receives a second amended complaint by the deadline, the court will screen the second amended complaint as required by 28 U.S.C. §1915A. If the court does not receive a second amended complaint by the deadline, or if the second amended complaint does not comply with the instructions in this order, the court will dismiss this case based on the plaintiff's failure to state a claim in

his amended complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$339.70** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Superintendent of the Drug Abuse Correctional Center, where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. It is the plaintiff's responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 18th day of October, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**