UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHANNON LEE DERTZ,

      Plaintiff,

v.                     Case No. 24-cv-995-pp

PETE STIEFVATER, *et al.*,

      Defendants.

**ORDER SCREENING SECOND AMENDED COMPLAINT (DKT. NO. 14) UNDER 28 U.S.C. §1915A**

  On October 18, 2024 the court screened plaintiff Shannon Lee Dertz's *pro se* complaint under 42 U.S.C. §1983, determined that it did not state a claim and gave the plaintiff a final opportunity to amend his complaint. Dkt. No. 13. The court allowed the plaintiff to file a second amended complaint "regarding his allegations of conspiracy, retaliation, a due process violation or failure to protect," but did not allow him to "include in the second amended compliant his allegations about being harassed by staff or his denied institutional complaints." Id. at 16. On October 31, 2024, the court received the plaintiff's second amended complaint. Dkt. No. 14. This order screens the second amended complaint.

**I. Screening the Second Amended Complaint (Dkt. No. 14)**

  A. Federal Screening Standard

  As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that

are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the second amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the second amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The second amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

2

Case 2:24-cv-00995-PP    Filed 12/26/24    Page 2 of 14    Document 16

B.  The Plaintiff's Allegations

The second amended complaint involves events that allegedly occurred while the plaintiff was incarcerated at Sanger Powers Correctional Center and the Drug Abuse Correctional Center (DACC). Dkt. No. 14. Like the amended complaint, it names as defendants Captain Pete Stiefvater and Superintendent Stephanie Cummings from Sanger Powers and DACC Captain Michael Verheyen, Superintendent Stephanie Hennings, Program Specialists Jennifer Fairchild and Mary Shandonay, Warden Clinton Bryant and social services supervisors Anna Kedzierski, Tammy Frassetto and Lonnie Krueger. Id. at 2. The plaintiff sues all defendants in their individual capacities. Id.[1]

The plaintiff alleges that he was transferred from Sanger Powers to DACC on February 28, 2024. Id. at 3. He alleges that he learned that Stiefvater is "stalking" him and abusing his authority by listening to the plaintiff's phone calls, reading his emails and monitoring his mail "for personal reasons and evil and malicious intentions and no other reasons." Id. The plaintiff says he has an email dated May 2, 2024 that shows that Stiefvater, with Cummings's knowledge, contacted "DACC staff" and told them that he was monitoring the plaintiff's calls because the plaintiff "has filed multiple complaints while housed at Sanger Powers." Id.

The plaintiff alleges that Verheyen, Fairchild and Shandonay "in a perverse way conspired, then deliberately and intentionally fabricated and/or made false statements." Id. at 4. He says that these false statements "resulted in

---

[1] The plaintiff does not name or reallege anything against Scott Taphorn, whom he named in his amended complaint. See Dkt. No. 12 at ¶9. The amended complaint also identified Hennings, Kedzierski, Frassetto and Krueger as the Jane/John Does named in the original complaint. Id. at p.2 & ¶¶12, 25; Dkt. No. 1 at ¶¶12, 25. The court will dismiss these persons as defendants because they are not named in the second amended complaint.

a falsified conduct report with 10 days loss of phone privileges as a disciplinary action." Id. The plaintiff says that because of this false disciplinary action, he was unable to speak with his elderly mother, his best friend and his children. Id. He asserts that he filed grievances and sent emails to the social service supervisors, and that he has written to Warden Bryant. Id. He says he appealed a contested hearing "that involved defendants from DACC and the continuing retaliation of Stiefvater and Cummings." Id. He alleges that on July 18, 2024, he received more emails from an open records request between Fairchild, Stiefvater, Shandonay, Cummings and Verheyen showing they were "conspiring to target him." Id.

The plaintiff claims that the defendants' actions violated his right to due process. Id. at 5. He elaborates about the falsified conduct report and alleges that on May 15, 2024, Verheyen called him to the security bubble and told him he would receive a conduct report because he "made a stink about (something)." Id. The plaintiff mentioned Sanger Powers and asked to see the conduct report, but Verheyen told him that Sanger Powers "wasn't on the report" and left the bubble. Id. A few hours later, the plaintiff received a conduct report for "lying and disobeying orders," which resulted in a ten-day loss of phone privileges. Id. He says that defendant Fairchild wrote the conduct report. Id. He alleges that the conduct report "was a sham, predetermined and [his] hearing was not conducted in a manner that was fair, impartial or done by DOC rules." Id. He says that Verheyen did not inform him of the allegations, he never saw or read the conduct report (despite previously alleging that he had) and he "never had an opportunity to provide a statement." Id. at 5–6. He also says that Verheyen should not have been the person to inform him about the

conduct report because Verheyen "issued the disposition/punishment to plaintiff." Id. at 6.

The plaintiff next claims that DACC social services supervisors Hennings, Kedzierski, Frassetto and Krueger failed to protect him from retaliation from the Sanger Powers defendants before he received the false conduct report discussed above. Id. He says that he emailed these defendants, "letting them know he was in fear of his safety, his well being [*sic*] and the outcome of his programming—Earned Release program (ERP) in means of retaliation from" Sanger Powers. Id. at 6–7. The plaintiff explains that he sought protection from the social services supervisors because he filed grievances and a lawsuit against the Sanger Powers defendants, who have "close ties . . . with DACC and Winnebago Correctional Center (WCC) by marriage, family and associates etc. in means of conspiring and retaliation with the assistance of Verheyen, Fairchild, Shandonary [*sic*]." Id. at 7. He says that he sent one email addressed to Hennings, who is the superintendent and head of social services, "letting her know of these actions by these defendants." Id. The plaintiff reiterates that he "has filed grievances on this issue pertaining to social services supervisors." Id. He says that he also spoke to Fairchild about transferring to a different institution. Id. She provided him a "separation form to fill out and return" but "nothing came off [*sic*] it." Id. at 7–8. The plaintiff says that he then "filed multiple emails after filing grievances, after he obtained open records." Id. at 8.

The plaintiff separately alleges that on July 14, 2024, Verheyen called the plaintiff to central control to ask the plaintiff "why he was concerned about his safety." Id. He says that Verheyen threatened him by telling him he could "send plaintiff to a different prison to do his ERP if he said anymore about his safety." Id. The plaintiff asserts that this was in retaliation "for filing

5

grievances," and that it would take him months to "even have a new start date for" ERP if he were transferred to another institution. Id. He says that Verheyen made these comments "knowing plaintiff is starting ERP . . . at DACC in a week." Id. at 8–9.

The plaintiff claims that social services supervisors Hennings, Kedzierski, Frassetto and Krueger failed to protect him from "injuries or in failure to intervene to prevent these evil and malicious acts from occurring." Id. at 9. He claims that Fairchild, Stiefvater, Shandonay, Cummings and Verheyen conspired and retaliated against him "for no need to cause and refusing to intervene." Id. at 9–10. He claims that Fairchild and Verheyen denied him due process in relation to the false conduct report. Id. at 10. He also claims that Warden Bryant was deliberately indifferent and failed to discipline or otherwise "curb the known abuse of inmates" from Stiefvater, Cummings, Verheyen and Fairchild. Id. He asserts that Verheyen threatened "to prolong his incarceration time without need or cause." Id. Finally, he says that Stiefvater stalked him "for bi[a]sed reason to cause harm and no other." Id.

The plaintiff seeks unspecified injunctive relief and unspecified damages. Id. at 11. He asks the court to expunge his disciplinary conviction and requests to proceed on "[s]tate law claims of negligence against defendants." Id.

C.  Analysis

The second amended complaint, like the amended complaint, is convoluted and difficult to follow. The court believes the plaintiff again is alleging that several of the defendants at Sanger Powers conspired, retaliated and falsified a conduct report against him that resulted in a ten-day loss of phone privileges. He says that DACC staff failed to protect him from those unlawful actions, and that Warden Bryant failed to discipline the defendants

for their unlawful conduct. He alleges that Verheyen threatened to extend his time in prison, and that Stiefvater stalked him.

The plaintiff claims that Fairchild, Stiefvater, Shandonay, Cummings and Verheyen conspired against him. The court explained in the previous screening order that conspiracy "is not an independent basis for liability under §1983." Dkt. No. 13 at 9 (citing Smith v. Gomez, 550 F.3d 613, 617 (7th Cir. 2008); and Cefalu v. Village of Elk Grove, 211 F.3d 416, 423 (7th Cir. 2000)). The plaintiff may proceed on this claim only if he shows that the defendants agreed to deprive him of a constitutional right and took actions that did, in fact, violate his rights. Id. (citing Beaman v. Freesmeyer, 776 F.3d 500, 510 (7th Cir. 2015); and Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018)). The court first must determine whether the plaintiff alleges enough to show that the defendants violated his rights and then may determine whether he alleges facts showing the same defendants agreed to violate his rights in that way.

The plaintiff alleges that defendants Verheyen, Fairchild and Shandonay made false statements that led to Fairchild issuing a false conduct report against the plaintiff for lying and disobeying orders because, according to Verheyen, the plaintiff "made a stink" about something. The court previously explained that to proceed on a claim under the Due Process Clause of the Fourteenth Amendment, "the plaintiff must show: "(1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." Id. at 11 (citing Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir. 2007)). The court could not determine whether the allegedly false disciplinary report interfered with a protected liberty or property interest because the plaintiff did not say what discipline he faced. Id. at 11–12. Without knowing the potential consequences

of the conduct report, the court could not "determine what process he was due and whether the defendants denied him that process." Id. at 12.

The allegations of the second amended complaint show that the plaintiff was not due any process. The court previously explained that the plaintiff has no "due process right not to be charged with or convicted of a prison disciplinary offense." Id. at 11 (citing Wolff v. McDonnell, 418 U.S. 539, 564–71 (1974)). That means that the mere fact that the plaintiff faced a false conduct report, on its own, does not give rise to due process protections. A prison restriction may create a protected interest only if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Prison restrictions must constitute "a sufficiently large incremental reduction in freedom to be classified as a deprivation of liberty" under Sandin. Paige v. Hudson, 341 F.3d 642, 643 (7th Cir. 2003). The plaintiff says that the only discipline he received from this conduct report was ten days' loss of phone privileges. That is not an atypical or significant hardship relative to ordinary prison life, nor does it constitute a sufficiently large reduction in the plaintiff's freedom. See Bryson v. Eckstein, No. 22-1921, 2023 WL 5923983, at *1 (7th Cir. Sept. 12, 2023) (citing Lekas v. Briley, 405 F.3d 602, 610 (7th Cir. 2005); and Wagner v. Hanks, 128 F.3d 1173, 1175 (7th Cir. 1997)). Because the result of this conduct report was minor, the defendants did not owe the plaintiff any formal process, and he cannot state a due process claim. Id. That means this cannot be the basis for the plaintiff's conspiracy claim.

The only other allegations that could underlie the plaintiff's conspiracy claim are that Fairchild, Stiefvater, Shandonay, Cummings and Verheyen retaliated against him. The court previously explained that it analyzes these

claims under the First Amendment. Dkt. No. 13 at 9–10 (citing Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)). The plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity" and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

      The plaintiff alleges that he filed grievances and a lawsuit against Sanger Powers staff, which could be protected conduct. Daugherty, 906 F.3d at 610. But he does not specify *what these defendants did* that constitutes retaliation. The plaintiff alleges that Stiefvater monitored his calls because he filed past complaints. But monitoring the plaintiff's calls did not deprive him of any rights. That is standard protocol for all incarcerated persons at any correctional facility. See Van den Bosch v. Raemisch, 658 F.3d 778, 785 (7th Cir. 2011). The plaintiff alleges that Verheyen, Fairchild and Shandonay made false statements that led to the conduct report, but he does not allege that this was in retaliation for grievances or the lawsuit that he previously filed. He says only that they did this "deliberately and intentionally" and "in a perverse way." Dkt. No. 14 at 4. The plaintiff generally alleges "continuing retaliation of Stiefvater and Cummings," but he does not describe the actions they took that he believes were retaliatory. Stating that a defendant's actions were retaliation is a legal conclusion that is not entitled to the presumption of truth. See Iqbal, 556 U.S. at 679. The plaintiff has not described any conduct by the defendants from which the court can determine whether they acted in response to his protected conduct to deprive him of his rights.

      The only exception is the plaintiff's allegation that Verheyen told the plaintiff that he could be transferred to a different institution "if he said

anymore about his safety," and that his ERP time would start over. This threat, which could have been "designed to deter future speech" and penalize the plaintiff for his "past speech," can form the basis of a First Amendment claim. Fairley v. Andrews, 578 F.3d 518, 525 (7th Cir. 2009). Verheyen's threat also could have been enough to deter the plaintiff from filing future grievances about his safety concerns. See Douglas v. Reeves, 964 F.3d 643, 649 (7th Cir. 2020) (explaining that "not only actual harms but also threats of harm can deter First Amendment activity"). The court finds that the plaintiff sufficiently states a First Amendment claim of retaliation, but only against defendant Verheyen.

The plaintiff has not alleged that Verheyen made this threat in agreement with other defendants to violate the plaintiff's rights, nor has he alleged facts showing that Fairchild, Stiefvater, Shandonay or Cummings violated his rights at all. That means that the plaintiff has not sufficiently alleged a claim of conspiracy against any defendant. Because the second amended complaint does not sufficiently state any claim against Stiefvater, Cummings, Fairchild or Shandonay, the court will dismiss them from this lawsuit.

Similarly, because the second amended complaint fails to state a claim that the Sanger Powers defendants conspired against the plaintiff or deprived him of due process, it does not state a claim that social services supervisors failed to protect the plaintiff from the conspiracy or due-process deprivation. But the plaintiff also alleges that the social services supervisors failed to protect him from potential retaliation from DACC staff, including Verheyen. Prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent. Gill v. Milwaukee, 850 F.3d 335, 342 (7th Cir. 2017). The plaintiff says that he notified the social

services supervisors about Verheyen's alleged retaliation and his concerns about the outcome of his ERP. He alleges that Verheyen then retaliated against him by threatening to move him to another prison where he would have to start over in the ERP. He does not allege what the social services supervisors could have or should have done to protect him, nor does he allege whether they had a realistic opportunity to intervene to prevent Verheyen's retaliation from occurring. But he says that Hennings—one of the social services supervisors—is the Superintendent at DACC. That suggests that she outranks Verheyen (who is a captain) and could have told him not to threaten the plaintiff. Liberally construing the plaintiff's allegations, the court finds that the second amended complaint sufficiently alleges that Stephanie Hennings, Anna Kedzierski, Tammy Frassetto and Lonnie Krueger knew about Verheyen's alleged retaliation and could have intervened but failed to. The plaintiff may proceed on this claim.

The plaintiff has not stated a claim against Warden Bryant for the same reasons the court explained in the previous order. The plaintiff still has not alleged that Bryant was aware of the defendants' alleged misconduct before it occurred. The court explained that Bryant cannot be held liable solely because he "failed 'to discipline a subordinate or take other corrective action.'" Dkt. No. 13 at 15 (citing Phillips v. Mega Concrete Constr., LLC, Case No. 20-CV-658, 2022 WL 252100, at *8 (W.D. Wis. Jan. 27, 2022); and Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)). Because the plaintiff still fails to "allege that Bryant personally participated in or was aware of any of the alleged conduct before it occurred, he cannot be held liable for not taking corrective action." Id.

The plaintiff alleges that Stiefvater stalked him by listening to his phone calls, reading his emails and monitoring his mail. As the court has said, it is

11

Case 2:24-cv-00995-PP   Filed 12/26/24   Page 11 of 14   Document 16

well settled that institutional staff may monitor phone calls, emails and mail sent and received by incarcerated persons for institutional safety and security. See, *e.g.*, Van den Bosch, 658 F.3d at 785 (citing cases). For the same reasons, it would be reasonable for staff from one correctional institution to notify staff at another institution about any questionable communications. To the extent that the plaintiff is attempting to reallege his claim of harassment, the court did not allow him to amend his complaint about these allegations because they did not and could not state a claim. See Dkt. No. 13 at 14, 16 (citing Lisle v. Welborn, 933 F.3d 705, 719 (7th Cir. 2019)). The plaintiff's allegations about Stiefvater "stalking" him do not state a claim.

The plaintiff also seeks to proceed on a state law claim of negligence. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). A plaintiff may raise a negligence claim under state law, but the plaintiff has alleged no facts supporting a potential negligence claim. He mentions negligence only as part of his request for relief. The court is allowing the plaintiff to proceed on a claim that Verheyen *intentionally* retaliated against him and that the social services supervisors failed to intervene and prevent the retaliation. Because the plaintiff alleges no facts supporting a claim of negligence, the court will not exercise supplemental jurisdiction over this putative state law claim. The court will dismiss the state law claim without prejudice under 28 U.S.C. §1367(c)(3).

Finally, the plaintiff seeks injunctive relief against all the defendants. But he does not specify the purpose of his injunction or what he wants the court to order. Even if he did, the plaintiff has sued the defendants in their individual capacities only, and §1983 "does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." See Greenawalt v. Ind. Dep't of Corr., 397 F.3d 587, 589 (7th Cir. 2005) (citing Luder v. Endicott, 253 F.3d 1020, 1024–25 (7th Cir. 2001)). The plaintiff also asks the court to expunge his disciplinary conviction. But the plaintiff cannot seek this relief under §1983. To seek expungement of his disciplinary conviction he must file petition for a writ of *habeas corpus*. See Greene v. Meese, 875 F.2d 639, 640 (7th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475 (1973); and Larsen v. Sielaff, 702 F.2d 116, 118 (7th Cir. 1983)).

To summarize, the court will allow the plaintiff to proceed on 1) a First Amendment claim of retaliation against Verheyen and 2) a claim that social services supervisors Stephanie Hennings, Anna Kedzierski, Tammy Frassetto and Lonnie Krueger failed to protect him from Verheyen. He may not proceed on any other claim or against any other defendant. He may proceed only on his request for damages and may not seek any other relief.

## II. Conclusion

The court **DISMISSES** defendants Pete Stiefvater, Stephanie Cummings, Jennifer Fairchild, Mary Shandonay, Scott Taphorn, Clinton Bryant and the John and Jane Does.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the second amended complaint and this order to the Wisconsin Department of Justice for service on defendants Michael Verheyen, Stephanie Hennings, Anna

Kedzierski, Tammy Frassetto and Lonnie Krueger at the Drug Abuse Correctional Center. Under the informal service agreement, the court **ORDERS** those defendants to respond to the second amended complaint within 60 days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 26th day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**